# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| JONG CHEON LEE | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-311 (WEF) |
| | ) | |
| AGAPE HEALTH MANAGEMENT, INC., | ) | |
| et al. | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is before the Court on Plaintiff's Motion for Attorney's Fees and Costs (Dkt. 16).
Plaintiff sued his employer pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207.
The parties ultimately entered into a settlement agreement the terms of which were approved by
the Court. (Dkt. 17). The settlement agreement provides for this Court to make an award of
reasonable attorney's fees and costs to Plaintiff's counsel.[1] For the reasons set forth below and in
accordance with the Fourth Circuit's decision in *Jong Lee v. Agape Health Management, Inc.*, No.
23-1582, 2024 WL 3565309, (4th Cir. July 29, 2024), the Court **GRANTS** Plaintiff's motion (Dkt.
16) but for an amount less than Plaintiff's counsel requested. Specifically, the Court finds that a
total award of **$20,150.83**, consisting of **$19,565.93** for attorney's fees and **$584.90** for costs and
expenses, is reasonable and supported by the record in this case.

---

[1]     The settlement agreement required the parties to meet and confer in an attempt to agree on an award of
attorney's fees and costs. If the parties were unable to agree, then the issue would be decided by this Court. The
parties met and conferred but were unable to reach an agreement.

## I.   Factual and Procedural Background

This civil action was brought by Plaintiff against his employer, Agape Health Management, Inc. ("Agape") and its owner, chairman, and CEO Sun Ok Lee and president Dong Chul Choi (collectively the "Defendants").[2]  (Dkt. 1).  Agape is a company that provides adult care services, including home care.  Plaintiff was an employee of Agape who worked directly with patients as a personal care aide and was paid an hourly wage. (*Id*. at 3). Plaintiff alleged that Defendants violated the FLSA by failing to pay him the required time and a half for overtime work and by retaliating against him for refusing to return payments made to him by Defendants pursuant to Defendants' settlement with the U.S. Department of Labor. (*Id.* at 6–9)

Unlike the consolidated case, there was no motions practice in this case prior to settlement, although the case did proceed through written discovery. (Dkt. 9; *see also* Dkt. 16 at 2). The parties settled all claims after mediation by the undersigned on September 27, 2022. The settlement agreement required, among other things, Defendants to make a payment to Plaintiff and to pay reasonable attorney's fees and costs of litigation to Plaintiff's counsel.  The parties agreed on the amount to be paid to Plaintiff, but they could not agree on the award of attorney's fees and costs, and instead decided to submit the matter to the undersigned for determination. Thus, on February 21, 2023, the parties consented to the undersigned's jurisdiction to approve the FLSA settlement and determine the appropriate grant of attorney's fees and costs. (Dkt. 12).  On March 3, 2023, the District Judge entered an order conferring jurisdiction on the undersigned. (Dkt. 13). On March 27, 2023, the undersigned approved the settlement as to Plaintiff but continued the matter for further briefing and argument on the issuance of attorney's fees and costs. (Dkt. 17).

---

[2]    Several similar cases against Defendants were consolidated into *Son v. Agape Health Management, et al*, No. 1:20-cv-1047, for pretrial and settlement purposes.  This was the last case filed in a series of related cases, and as a result was not included in the consolidation orders.

On March 24, 2023, Plaintiff's counsel filed his Motion for Attorney's Fees as well as a brief in support. (Dkt. 16).  Defendants filed a response in opposition on April 7, 2023. (Dkt. 18). Plaintiff's counsel filed a reply in response to Defendants' opposition on April 18, 2023. (Dkt. 23). The undersigned heard oral argument from the parties on April 28, 2023 (Dkts. 28) and, in an ensuing order, awarded Plaintiff's counsel, Mr. Ryu, $30,000 in attorney's fees and $584.90 in costs. (Dkt. 29).  The parties cross-appealed the award and on July 29, 2024, the United States Court of Appeals for the Fourth Circuit issued an opinion vacating this Court's award of attorney's fees and remanding the case for further proceedings. (Dkts. 42, 43); *Jong Lee v. Agape Health Management*, *Inc.*, No. 23-1582, 2024 WL 3565309, (4th Cir. July 29, 2024).  Thereafter, the parties filed supplemental briefs (Dkts. 51, 54) and the undersigned heard additional oral argument from the parties on September 20, 2024, and took the matter under advisement to issue this Order.

## II.    Discussion

A.  <u>Standard of Review</u>

In an FLSA action, the statutory fee-shifting mechanism provides that a "prevailing party" is entitled to recover "reasonable attorney's fees" and the "costs of the action." *See* 29 U.S.C. § 216(b).  When an FLSA action is adjudicated on the merits, the "prevailing party" is typically clear, but in cases where the parties settle, the parties must agree that a particular party has "prevailed." *See Jackson v. Estelle's Place, LLC*, 391 F. Appx. 239, 242 (4th Cir. 2010) ("because the parties have agreed that Appellants are prevailing parties, Appellants are entitled to an award of attorney's fees and costs that they establish as reasonable").  However, where, as in this case, the parties' settlement agreement does not establish a "prevailing party" but provides that the Court will determine "reasonable attorney's fees" to be awarded to Plaintiff in case the parties fail to agree, the Court will apply a general "reasonableness" standard in making the award. *Jong Lee*,

No. 23-1582, at *7 (citing *In re Abrams & Abrams, P.A.*, 605 F. 3d 238, 243 (4th Cir. 2010) (internal quotation marks and citations omitted) (collecting cases) ("Nor is the reasonableness standard limited to the fee-shifting context . . . the law of this circuit has long been clear that federal district courts have inherent power and an obligation to limit attorneys' fees to a reasonable amount")).

The Court must undertake a three-step process to properly calculate an attorney's fee award. *McAfee v. Boczar*, 738 F. 3d 81, 88 (4th Cir. 2013). First, the Court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id*. (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F. 3d 235, 243 (4th Cir. 2009)). At this step, "[t]o ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply" the factors adopted in *Barber v. Kimbrell's, Inc.*, 577 F. 2d 216, 226 n.28 (4th Cir. 1978). *Id.* (citing *Johnson v. Georgia Highway Express Inc.*, 488 F. 2d 714, 717–19 (5th Cir. 1974)). The twelve *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 88 n.5.

At the second step, the Court must "'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Id*. (quoting *Robinson*, 560 F. 3d at 244).

At the third and final step, the Court "should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff'" *Id*. (quoting *Robinson*, 560

4

F. 3d at 244).

### Step 1:  Calculating the Lodestar Figure

#### a.  *Reasonable Rates.*

The party seeking attorney's fees carries the burden of establishing the reasonableness of the hourly rates requested. *Robinson*, 560 F. 3d at 244 (citing *Plyler v. Evatt*, 902 F. 2d 273, 277 (4th Cir. 1990).  "The fee applicant must produce satisfactory *specific evidence* of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler*, 902 F. 2d at 277 (emphasis added) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir.1987)). Thus, "[t]he market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client." *Robinson,* 560 F. 3d at 244 (quoting *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007) (internal quotation marks omitted)).  Generally, the moving party will submit in support, in addition to his own affidavits (which are not sufficient taken alone),[3] "affidavits from disinterested counsel, evidence of awards of similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the market.'" *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting *Spell*, 824 F. 2d at 1402).  For purposes of determining the prevailing rate, the relevant market "is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).  Additionally, "[i]n determining the reasonable rates, the Court is required to consider the relevant [*Barber*] factors." *McNeil v. Faneuil, Inc*., No. 4:15-cv-81, 2017 WL 9771834, at *5 (E.D. Va. Nov. 8 2017), *R&R adopted*, 2018 WL 1411017 (E.D. Va. March 21,

---

[3]    *Grissom v. The Mills Corp*., 549 F. 3d 313, 323 (4th Cir. 2008); *Plyler*, 902 F. 2d at 277.

2018)).

In this case, Plaintiff's counsel, Mr. Ryu, requests an award at the rates of $510 (2022) and $560 (2023) for himself,[4] and $510 (2023) for his associate, Sara Ryu.[5] (Dkt. 16 at 5; *see* Dkt. 16-1 at 5). To satisfy his burden of establishing the prevailing market rate for attorney's fees in the Eastern District of Virginia, Plaintiff's counsel initially offered: (1) his billing records in this matter; (2) an affidavit from himself; and (3) a copy of the *Laffey* matrix. However, on appeal, the Fourth Circuit held that "Plaintiffs' prevailing hourly-rate evidence is inadequate to support the award" as "Plaintiffs offered no specific evidence that the hourly rates sought coincided with the then prevailing market rates of attorneys in [this legal community] of similar skill and for similar work, which Fourth Circuit case law required him to do."[6] *Lee*, No. 23-1582, at *10 (internal quotation marks omitted). Moreover, the Fourth Circuit noted that "[t]he district court's failure to address the approximate 30 percent raise lead counsel gave himself over the course of these cases is also a problem," and that "the Laffey matrix is insufficient to carry plaintiff's burden." *Id.* (citing

---

[4]     As an initial matter, the Court rejects Defendants' argument that Plaintiff's counsel somehow "lack[ed] candor" to the tribunal by failing to disclose that he raised his rates despite the retainer agreements not expressly providing for any increases. (Dkt. 54 at 6-9). This omission is immaterial because Plaintiff's counsel represented his clients on a contingency basis that effectively provided Plaintiff would not bear the hourly costs of his attorney's services, and the parties expressly agreed the Court would determine reasonable attorney's fees. At no time has the undersigned questioned Plaintiff's counsel's candor to the Court.

[5]     While Plaintiff's opening brief does not expressly mention Sara Ryu, the attached billing records confirm that Plaintiff is seeking to recover for 1.1 hours of Sara Ryu's time billed at $510 per hour. (Dkt. 16-1 at 5).

[6]     Furthermore, while not directly addressed on appeal to the Fourth Circuit, the Court now finds that Plaintiff's citation of support in the rates in *Jang et al v. Friends Health Care Team, Inc.*, *et al.*, No. 1:21-cv-00093 (E.D. Va.) and *Hong v. Mommy's Jamaican Market Corp. et al.*, No. 1:20-cv-09612 (S.D.N.Y.) is also insufficient to carry Plaintiff's burden of proof. As Defendants correctly observe, Plaintiff's assertion that the Court "approved" an (imputed) $570 hourly rate in *Jang* is not relevant here because in that case, the Court generally accepted as "fair and reasonable" a settlement negotiated between the parties in which Mr. Ryu was to be paid one-third of Plaintiff's total recovery. *Jang*, No. 1:21-cv-00093, Dkt. 17 at 9, Dkt. 21. The Court never explicitly determined the reasonableness of Mr. Ryu's hourly rate and even if the Court had done so there is no evidence the rates charged in the Southern District of New York are materially similar to rates charged in the Eastern District of Virginia. Similarly, *Hong* was litigated outside of this district and is not of particular assistance to this Court in determining reasonable rates in *this* district.

*Robinson*, 560 F.3d at 245, *Grissom*, 549 F. 3d at 323).

On remand, Plaintiff's counsel submitted (1) a sworn declaration from himself that he billed a different client at the rate of $560 an hour for work unrelated to wage and hour disputes in 2023, and the same rate, for the same client, for wage and hour defense matters in 2024; and (2) portions of Wolters Kluwer's Real Rate Report for the years 2020 to 2023. (Dkts. 51, 51-1, 51-2, 51-3). The Court finds, however, that these materials, even taken with Plaintiff's prior submissions, are still insufficient to satisfy his burden to establish the prevailing market rate.[7] Mr. Ryu's second sworn declaration carries little weight because such a self-serving statement based on counsel's own billing practices is an insufficient reflection of "the prevailing market rates in the relevant community."[8] Counsel provides no external evidence such as an affidavit from an attorney who has experience prosecuting FLSA matters in this community. Moreover, what Plaintiff's counsel charged for wage and hour defense work in *2024* is not entirely relevant to what he charged for similar work in years past, particularly in light of the multiple significant increases in counsels' rates over the course of this case.

The Real Rate Reports are also unpersuasive. The Court takes notice of the fact that these reports are derived "from the *actual* rates charged by law firm professionals as recorded on invoices submitted and approved for payment." (Dkt. 51-2 at 5). While these reports may theoretically be valuable in establishing the relevant market rate in some cases, it cannot be

---

[7]     Plaintiff's counsel has now had two opportunities to establish a record that supports his requested hourly rate.

[8]     *See Project Vote/Voting for America*, 887 F. Supp. 2d at 710 ("Affidavits from the prevailing party alone are not sufficient.") (citing *Plyler*, 902 F 2d at 277). Mr. Ryu's second sworn declaration has little probative value even when viewed in conjunction with the other evidence. While the Court understands Mr. Ryu's suggestion that few FLSA defense attorneys would provide him an affidavit and that plaintiff's attorneys are rarely paid by their clients directly (Dkt. 291 at 1), such concerns do not preclude him from obtaining affidavits of disinterested plaintiff's attorneys attesting "to [his] experience . . . and the reasonableness of his hourly rate and the hours expended" more generally, as is common practice in this field. *Smith v. Q.E.D. Systems, Inc.*, 2020 WL 975368, at *4 (E.D. Va. Feb. 11, 2020); *Funkhauser v. City of Portsmouth, Virginia*, 2015 WL 12765639, at *4 (E.D. Va. May 14, 2015).

established that such reports are valuable in *this* case. Courts have repeatedly observed the Reports' "methodology is opaque; it claims to be based on [actual data] but does not explain whether its sample is representative of the [judicial district] market as a whole—i.e., whether its sample is skewed toward litigation partners working for large corporate law firms—or how it normalizes the data." *Hicks v. Vane Line Bunkering, Inc.*, 2013 WL 1747806, at *9 (S.D.N.Y. Apr. 16, 2013); *see, e.g.*, *Cortes v. Juquila Mexican Cuisine Corp.*, 2021 WL 1193144, at *5 (E.D.N.Y. Mar. 29, 2021) ("The Real Rate Report is insufficient to meet Plaintiffs' burden to demonstrate that the requested rates conform to market rates for . . . representation of employees in wage-and-hour litigation [] in this district."). Indeed, while the Reports' definition of the Washington, D.C. area apparently includes Arlington and Alexandria (Dkt. 51-2 at PageID# 284), it is unknown if the Reports' data sample is, for example, over-representative of Washington, D.C. and thus a poor reflection of the market in the Eastern District of Virginia. Moreover, the Reports' analyses for the practice area most relevant to this case and Plaintiff's counsel ("Employment and Labor: Other") only applies to firms of more than 200 lawyers which may have a significantly different client base and billing practices than that of a solo practitioner such as Plaintiff's counsel. (Dkt. 291-2 at PageID# 283). The Real Rate Reports suffer from the same flaw as the *Laffey* matrix in that it is unclear whether or how they are "reliable indicator[s] of the hourly rates of litigation [or more specifically, wage-and-hour] attorneys in [Alexandria], Virginia." *Robinson*, 560 F. 3d at 245 (quoting *Grissom* 549 F. 3d at 323).

Given the limited persuasive evidence before the Court, Defendants argue that Plaintiff's counsel has failed to satisfy his burden of establishing the reasonableness of the requested rates as to both himself and Sara Ryu.[9] As a result, Defendants contend the Court should not require

---

[9] Plaintiff never submitted any materials related to Sara Ryu's billing rate. However, at the September 20, 2024 hearing, Michael Ryu represented that he supervised and approved Ms. Ryu's work.

Defendants to pay any of Plaintiff's attorney's fees and costs, particularly because this is not a case arising under the FLSA's mandatory fee-shifting provision, 21 U.S.C. § 216(b).  Defendants further argue that Plaintiff's counsel should be compensated—if at all—by the individual Plaintiff based on a percentage of the settlement, which was an option under the Plaintiff's retainer agreement with counsel.  (Dkt. 54 at 8–9).  Defendants cite no authority that compels such a result, and the Court rejects this argument.  As a condition of settlement, the parties clearly agreed that Defendants would pay Plaintiff's reasonable attorney's fees and costs.  This understanding was plainly set forth in the settlement agreement, memorialized in the Court's approval of the settlement agreement, rooted in both parties' briefing pertaining to attorney's fees and stated on the record during the first oral argument on this issue.  (Dkts. 17, 45).[10]  The Court fully intends to honor the agreement of the parties and make an award of attorney's fees and costs.  To do otherwise would shift the financial burden from Defendants to the individual plaintiff and thereby fundamentally alter a material term upon which this case was settled.[11]  Defendants' position would lead to a result that is patently unfair and wholly unanticipated by the parties at the time the agreement was formed.

Even though Plaintiff's counsel has developed an unremarkable record, the Court is nevertheless in a position to give full effect to the reasonableness standard the Fourth Circuit set in this case, which is "not limited to the fee-shifting context." *Lee*, No. 23-1582, at *7.  Under that framework, the Court must now "turn to other sources to ascertain reasonable hourly rates."[12]  *Page*

---

[10]    The Court notes that Defendants' current counsel, James Victory, Esquire, did not represent Defendants during the settlement negotiations, approval of the settlement agreements or during the initial contested motions for attorney's fees and costs.

[11]    The Court notes that to adopt Defendants' position would also result in a significant reduction in the amount of money actually received by Plaintiff.

[12]    Defendants appeared to agree as much in their original briefing on the initial motion for attorneys' fees. (Dkt.

*v. Virginia State Board of Elections*, 2015 WL 11256614, at *5 (E.D. Va. March 11, 2015).

A reliable starting point to ascertain a reasonable hourly rate for Mr. Ryu is the opinion of United States District Judge Leonie M. Brinkema in *Cho v. Joong Ang Daily News Washington, Inc., et al*., No. 1:18-cv-1062-LMB-IDD, Dkt. 92, 2020 WL 1056294 (E.D. Va. March 4, 2020). In the *Cho* case, which is strikingly similar to this case and cited and argued by both Plaintiff's counsel and Defendants, Judge Brinkema ruled that as recently as 2019, a rate of $350 per hour was a reasonable fee charged by Mr. Ryu for prosecuting an FLSA case in this District. *Id*. at *10. In fact, during the initial briefing regarding attorney's fees and costs, Defendants' counsel (who is not Defendants' current counsel) suggested the Court use the findings in the *Cho* case to establish a reasonable rate for Mr. Ryu in this case. (*See* Dkt. 18 at 12 ("If [] the Court were inclined to determine a reasonable rate for Mr. Ryu, the Court need look no further than his rate in the *Cho* matter, while allowing for reasonable percentage increases each year")).[13]  The Court agrees that the *Cho* case is the proper starting point.  There are numerous parallels between the *Cho* case and the case at hand, but most critically, *Cho* involved the same plaintiff's counsel, Michael Ryu, the same defense counsel, James Victory, materially similar FLSA overtime and retaliation claims, and in a contested hearing regarding an award of attorney's fees the Court was called upon to determine the reasonableness of Mr. Ryu's hourly rate and to do so in the context of this legal community. *Cho*, 2020 WL 1056294,. at *1, 14.

The *Cho* case was litigated from 2018 to 2019 and was resolved when the plaintiffs accepted a Rule 68 offer of judgment from the defendants that also provided that the defendants

---

18 at 12).

[13]     Mr. Victory was lead counsel for Defendants through most of the pretrial litigation. Maureen Ross Knight, Esquire of the law firm of Constangy, Brooks, Smith & Prophete LLP, represented Defendants through the settlement conference, the approval of the settlement agreement and the initial litigation regarding attorney's fees and costs. Ms. Knight's firm was replaced for purposes of appeal (Dkt. 31) and eventually Mr. Victory was re-engaged as lead counsel representing Defendants on this motion.

would pay an additional amount for reasonable attorney's fees and costs as determined by the Court. *Id*. at *6.  Judge Brinkema subsequently found that Michael Ryu's requested hourly rate of $350 was reasonable. *Id.* at *10.  In doing so, Judge Brinkema expressly considered Mr. Ryu's "level of experience and skill level" which goes to *Barber* factors three and nine, crediting his fifteen years in the practice of law, multi-state litigation experience including "many wage and hour cases," and Korean language skills, which were crucial for communicating with his client and understanding relevant case related documents.  *Id.* at *9. The Court also noted that a rate of $350 was "consistent with previous attorneys' fees awards granted by this court," which bears on *Barber* factor twelve. *Id.* at *10 (citing *Jackson v. Estelle Place, LLC*, l:08-cv-984, 2009 WL 1321506 (E.D. Va. May 8, 2009).  Although the *Cho* defendants "question[ed] Ryu's reputation and ability," Judge Brinkema declined to reduce Michael Ryu's hourly rate on such a basis, noting that his rate was "already below the range provided by the Vienna Metro matrix for attorneys with his level of experience"[14] and that concerns about inefficient use of time would be captured in the reasonable hour analysis. *Id*.

    Similar findings are warranted in the case now before the Court.  As to *Barber* factors three and nine, Mr. Ryu has now been practicing law for twenty years, is admitted in the federal and state courts in five states and continues to represent plaintiffs in wage-and-hour as well as other employment related cases. (Dkt. 16 at 4–5). Sara Ryu is Michael Ryu's law partner, has been practicing law for twenty-two years, and is admitted to the Bar of New York. *Id*.  Both have Korean language skills and an understanding of the Korean community and culture that were important to the prosecution of this case, as their client spoke primarily Korean and only limited English. (Dkt. 16 at 4).  Thus, consistent with Defendants' previous suggestion (Dkt. 18 at 12), the Court begins

---

[14]       *See infra* note 16.

with Judge Brinkema's finding in the *Cho* case that a rate of $350 per hour is reasonable for Mr. Ryu's legal services. Sara Ryu was not involved in the *Cho* case, but the record indicates that she is an experienced and competent attorney, and with respect to a reasonable billing rate, is similarly positioned to Mr. Ryu. However, given Mr. Ryu's representation at the September 20, 2024 hearing that Ms. Ryu worked on this case under his supervision and always billed at a slightly lower rate, it is appropriate to begin with a $330 hourly rate for Ms. Ryu.[15]

However, these amounts are simply starting points because Plaintiff's counsel should be afforded some reasonable increase in compensation as time passes, skill and experience is further developed, and economic circumstances change. Indeed, Defendants' previous counsel acknowledged as much when they argued that the Court should apply the rate approved by the Court in the *Cho* matter, "while allowing for reasonable percentage increases each year." (*See* Dkt. 18 at 12). Determining "reasonable percentage increases" from the conclusion of the *Cho* case in 2019 to the conclusion of this case in 2023 is a challenge given that Plaintiff's counsel's explanation for the rate increases is simply that "[i]n 2020, [he] realized he was grossly undercharging compared to other lawyers of similar experience [and] decided to raise his billing rate." (Dkt. 23 at 14).[16]   This reasoning is inadequate to justify "the approximate 30 percent raise

---

[15]     The Court finds Defendants' arguments that Sara Ryu's hourly rate should be reduced to that of a paralegal because she is not barred in Virginia and did not seek admission *pro hac vice* on this matter unavailing. (Dkt. 18 at 14; Dkt. 54 at 5–6). The Court accepts Michael Ryu's representation that Sara Ryu was working on this case under his supervision and that he was the attorney ultimately making legal decisions and filing pleadings with the Court. Defendants have not cited any authority for the proposition that the Local Rules or the Virginia Rules (i.e., Part 6, § II, Rule 5.5 of the Rules of Supreme Court of Virginia) prevent an attorney properly licensed in another State from billing their time when working under the supervision of an attorney admitted to practice before this Court. In fact, such an arrangement seems to be a common practice of many large national law firms.

[16]     Relatedly, that Plaintiff's counsel's claimed rates, even with raises, are lower than those charged by some other attorneys or consistent with, for example, the Vienna Metro Matrix, does not *automatically* establish that Plaintiff's counsel should receive their claimed rates and raises. For one, "'district courts are not required to follow any particular fee matrix.'" *Lee*, No. 23-1582, at *11 n. 5 (quoting *Harwood v. Am. Airlines, Inc.*, 37 F.4th 954, 961 (4th Cir. 2022)); *see also Newport News Shipbuilding and Dry Dock Co. v. Holiday,* 591 F.3d 219, 228 (4th Cir. 2009) (a matrix is a "useful starting point to determine fees, not a required referent"). And this makes sense because a fee matrix does not necessarily capture the realities of practice for many attorneys in this District. Indeed, the Vienna

lead counsel gave himself over the course of these cases." [17]  *Lee*, No. 23-1582, at *11 n. 4.

Given the sparse and somewhat muddled record made by Plaintiff's counsel in support of his motion, the Court could simply rely on the $350 figure approved in 2019 to calculate the loadstar figure in this case.  However, the Court finds there is a simple and reliable methodology that fairly compensates Plaintiff's counsel for the change in economic conditions and his and Ms. Ryu's professional growth from 2019 to 2023.  After careful consideration of the limited options available to the Court, the undersigned finds it appropriate to calculate the rate increase by looking to the Consumer Price Index to account for changing economic conditions.  Between 2020 and 2023, the Consumer Price Index rose a total of 18%.[18]  Therefore, the Court will increase Mr. Ryu and Ms. Ryu's 2019 hourly rates by 18% and apply that figure to hours appropriately devoted to this case. The Court recognizes that the 18% increase applied across the working years is linear even though the changes in the Consumer Price Index for the years in question are variable and do not follow a similar pattern. Moreover, it is also true that unlike counsel's fee petition in the consolidated *Son* cases, the record presented here is relatively simple and the hours worked by

---

Metro Matrix was intended to reflect "complex civil litigation" and even "very competent attorney[s] in an uncomplicated dispute" may command less. *Salim v. Dahlberg*, 2016 WL 2930943, at *6 (E.D. Va. May 18, 2016) (quoting *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 n.12 (E.D. Va. 2015)).  It is no surprise then that courts in the Eastern District of Virginia, Alexandria Division, routinely consider FLSA plaintiff's attorneys' fees petitions requesting hourly rates below those in the Vienna Matrix. *See, e.g.*, *Cho*, No. 1:18-cv-1062-LMB-IDD, at *10; *Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 386 (E.D. Va. Jan. 21, 2020); *see also Seo v. Northstar Prop. Mgmt. Grp., LLC*, 2022 WL 424835, at *4 (E.D. Va. Aug, 26, 2022), *R&R adopted*, 2022 WL 4242502 (E.D. Va. Sept. 14, 2022).  Thus, it might not be the case that Plaintiff's counsel (and other wage-and-hour plaintiff's attorneys) were "grossly undercharging" for their services.

[17]     *Cf. Grissom*, 549 F. 3d at 323 (holding that plaintiff did not satisfy their burden when, among other defects, double-digit annual hourly rate increases "[could not] simply be attributed to economic inflation for the same time periods.").

[18]     The Consumer Price Index for All Urban Consumers was 1.2% in 2020, 4.7% in 2021, 8.0% in 2022, and 4.1% in 2023. *See* BUREAU OF LABOR STATISTICS, HISTORICAL CONSUMER PRICE INDEX FOR ALL URBAN CONSUMERS (CPI-U): U.S. CITY AVERAGE, ALL ITEMS, BY MONTH, https://www.bls.gov/cpi/tables/supplemental-files/historical-cpi-u-202408.pdf (last visited Sept. 30, 2024).

each biller per year are discernable.[19]  The Court also finds, however, that any modest benefit to Plaintiff's counsel resulting from applying the 18% increase to both billing years also encompasses a fair adjustment for an increase in counsels' professional skill and competence.  Even though this methodology is imperfect, this adjustment is a fair, equitable, and workable means of affording Plaintiff's counsel reasonable rate increases in light of recent economic conditions while at the same time giving them some additional credit for the development of skill and experience with the passage of time.

For these reasons, the Court finds that the reasonable rate for Mr. Ryu for 2022 and 2023 is $413 per hour ($350 approved in 2019 plus an 18% increase, which comes to an additional $63 per hour).  Similarly, the Court finds that the reasonable rate for Ms. Ryu for 2022 and 2023 is $389.40 ($330 per hour plus an 18% increase which comes to an additional $59.40 per hour).

These adjusted rates are consistent with recent attorney's fees awards granted by this Court in similar FLSA cases, which bears on *Barber* factor twelve. *See, e.g.*, *Seo*, 2022 WL 4242835, at *4 ($425 hourly rate was reasonable); *Hudson v. Dunn*, No. 1:23-cv-781-RDA-WBP, 2024 WL 2870845, at *10 (E.D. Va. March 15, 2024) ($350 hourly rate was reasonable); *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 367–68 (E.D. Va. 2021) ($430 hourly rate for counsel "highly experienced in FLSA wage and hour actions" was reasonable); *see also Gomez*, 434 F. Supp. 3d at 386 ($495 and $460 hourly rates for counsel who had "extensive experience litigating in federal courts and in employment matters," including as attorneys for major national law firms, the U.S. Department of Justice, and the Federal Trade Commission, were reasonable).  Relatedly, as to factor nine (the experience, reputation, and ability of the attorney), Defendants, in their supplemental briefing, attack Michael Ryu as having questionable "billing judgment" and "not

---

[19]     *See Son v. Agape Health Management et al*, No. 1:20-cv-1047-WEF, Dkt. 295, at *14–15 (E.D. Va. Dec. 5, 2024).

14

hav[ing] a good reputation . . . in this district," citing Judge Brinkema's opinion in *Cho* where she observed that Mr. Ryu made inefficient use of time. (Dkt. 18 at 14; Dkt. 54 at 3); *Cho*, 2020 WL 1056294, at *10–14. But here, as in *Cho*, these considerations will be captured in the reasonable hour analysis, discussed below, and do not warrant a reduction in hourly rate. *Cho*, 2020 WL 1056294, at *10.

Plaintiff's counsel also requests an hourly rate of $180 per hour for their paralegal, Cathy Kim.[20] However, Ms. Kim's hourly rate was $80 as recently as 2019. Defendants note that $180 per hour for Ms. Kim is a 125% increase from her 2019 rate. (Dkt. 18 at 14); *See Cho*, 2020 WL1056294, at *10. In support of this $100 per hour increase from 2019 to 2022, Plaintiff's counsel argues that Ms. Kim has worked for him since 2012, is fluent in Korean and English, and holds a bachelor's degree in business from George Mason University (Dkt. 23 at 16), and that her billable rate is still at the low end of the *Laffey* (and *Vienna*) matrices (Dkt. 16 at 5; Dkt. 23 at 16). The Court does not find Defendant's suggestion that Ms. Kim's rate should be reduced due to her "lack of legal credentials," but the Court does find that Plaintiff has failed to justify the large increase in Ms. Kim's rates in a relatively short period of time. Thus, a similar 18% increase will be applied to Ms. Kim's 2019 rate, which brings it to $94.40 per hour ($80 per hour plus an 18% increase which comes to an additional $14.40 per hour). This adjusted rate is consistent with the observation that a rate of "[l]ess than $150 [per hour] is common for paralegals." *United States v. Leebcor Services, LLC*, 2022 WL 3337793, at *6 n.9 (E.D. Va. April 1, 2022) (citing *Baust v. City of Va. Beach*, 574 F. Supp. 3d 358, 367 n.3 (E.D. Va. Dec. 8, 2021) (FLSA action: $100); *Gomez*, 434 F. Supp. 3d at 386 (FLSA action: $135)). In addition, the Court has reviewed the nature of

---

[20]     Plaintiff also requests payment for Heejung Yang, but it is unclear what position this person holds, and they do not appear on any of Plaintiff's billing records. Accordingly, the Court assumes that all paralegal tasks were performed Cathy Kim.

the work performed by Ms. Kim as described in Exhibit A to Plaintiff's Fee Petition (Dkt. 16-1) and finds the adjusted rate of $94.40 per hour to be reasonable given the straightforward nature of the work performed.

### b. *Reasonable Hours*

Next, to establish the lodestar figure at step one, the Court must determine the hours that were "reasonably expended" by counsel and their staff. *McNeil*, 2017 WL 9771834, at *7 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The reasonable hour figure should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id*. (quoting *Hensley*, 461 U.S. at 434). Plaintiff must also provide "evidence 'supporting the hours worked' and the exercise of 'billing judgment' that establishes that the hours expended were reasonable." *Id*. (quoting *Hyatt v. Barnhart*, 315 F. 3d 239, 253 (4th Cir. 2002)).

In his Fee Petition, Plaintiff's counsel identifies the number of hours spent on each task by himself, Ms. Ryu and their paralegal. (Dkt. 16-1 at 6). Specifically, counsel provides time records that indicate that he is requesting payment for 57 hours attributed to himself, 1.1 hours for Ms. Ryu, and 27.7 hours for Ms. Kim. *Id*. In support of this request, Mr. Ryu attached a draft bill that describes the legal work, identifies the individual plaintiff, the date or date range of the work, the length of time devoted to each task, the rate charged, and the person who performed the work. (Dkt. 16-1). Mr. Ryu also certified that this information was contemporaneously entered into the law firm's software program designed to track billing, which was used to create the draft bill. *Id*. at 1. Defendants raise several objections to Plaintiff's claimed hours in this case.

### i. *Block-Billing*

Defendants assert that Plaintiff's counsel's time entries are "riddled with block-billing." (Dkt. 18 at 5–6). "Block billing" refers to the disfavored "practice of grouping, or lumping, [of]

several tasks under a single entry, without specifying the amount of time spent on each particular task." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (internal quotation marks omitted).  "Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." *Id.*  "Such a reduction can be accomplished in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." *Id*.

Even taking Plaintiff's point that block-billing does not necessarily occur when the grouped tasks are closely related and "not necessarily separable activities" such that a single entry can describe with adequate specificity what counsel's time was expended on,[21] the Court finds that in this case Plaintiff's counsel's billing records contains one instance of block-billing.  Specifically, Mr. Ryu attributes 8.9 hours on October 10, 2022 to "meeting with client re hours, rates, and recalculations based on defendants' records and deposition prep." (Dkt. 16-1 at PageID# 83).  The tasks described here are not so bound up with one another such that there is no need to probe whether the time spent on each constituent is reasonable.  Thus, counsel's use of block billing leaves the Court to "hypothesize whether [] this time is excessive given the descriptions." *Lee Supinger v. Virginia*, 2019 WL 1461071, at *3 (W.D. Va. April 2, 2019).  However, given counsel's explanation that these 8.9 hours concerned "inseparable activities for deposition preparation" (Dkt. 23 at 5), which as discussed below, should also be adjusted because no depositions actually occurred, the Court will not reduce Mr. Ryu's hours request on the basis of

---

[21]     (Dkt. 23 at 3–6 (citing *Larsen v. AR Resources, Inc*., 453 F. Supp. 3d 849, 853 (E.D. Va. 2020)).  There must, of course, be a logical limit to this principle, and that limit has been exceeded here.

block-billing alone so as to avoid double-counting deductions.

      *ii.*   *Vague and Inadequate Time Entries*

Relatedly, Defendants argue that Plaintiff's time entries are "vague and inadequate." (Dkt. 18 at 6–8). Billing records that are "inappropriately vague" and fail to "identify the nature of the work performed" again significantly frustrate the Court's review and also justify the reduction of a fee award. *See Crump v. United States Dept. of Navy by & through Mabus*, 245 F. Supp. 3d 692, 709 (E.D. Va. 2017); *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 600 (E.D. Va. 2016); McNeil, 2017 WL 9771834, at \*9; *Cho*, 2020 WL 1056294, at \*13*; Rum Creek Coal Sales, Inc. v. Caperton*, 31 F. 3d 169, 180 (4th Cir. 1994) ("We have frequently exhorted counsel to describe specifically the tasks performed").

The Court agrees that in this case there are a moderate number of vague descriptions in Plaintiff's counsels' billing records. These include ambiguous entries for 0.3 hours to "assess the situation" (Dkt. 16-1 at PageID# 81), 1 hour for "retaliation count" (*Id*.), 2.9 hours for "meeting with client re facts," 0.3 hours for "FOIA," 0.3 hours to "review facts" (*Id*. at PageID# 83), 0.4 hours for "negotiation strategy) (*Id*. at PageID# 84), 1.6 hours for "litigation strategy; plan, evaluation" (*Id*.), and 0.5 hours for "settlement negotiation strategy." *Id*.

Contrary to Plaintiff's counsel's suggestions (*see* Dkt. 23 at 7–9), the Court does not agree that what counsel was doing during these hours, or the reasonableness of such, is somehow obvious from the descriptions provided. Plaintiff's counsel should know as much, given that Judge Brinkema previously cited his substantially similar "vague and sometimes unintelligible entries" as one basis for reducing the lodestar figure in *Cho*. 2020 WL 1056294, at \*13–14 (citing as deficient descriptions: "organize case documents," "PDF and send to opposing counsel," "wrapping up of janice cho deposition," "trial strategy", "litigation planning and strategy,"

18

"attention to joint discovery plan," and "supp 9th").  Moreover, to the extent that Plaintiff's counsel suggests that they cannot provide greater detail owing to duties of confidentiality stemming from attorney-client privilege and the settlement agreement (Dkt. 23 at 5), the granularity necessary for the Court to discern the reasonableness of the fee request and any excess or redundancy in hours falls far short of transgressing counsels' obligations. *See Perez-Sosa v. Garland*, 22 F. 4th 312, 330 (1st Cir. 2022) ("an attorney's duty to protect confidential client communications . . . does not run at cross-purposes with the attorneys' obligation to keep sufficiently transparent time records"). Although Plaintiff's counsel's billing records are not a model of clarity and to a degree frustrate the Court's review, by examining the docket as a whole and the filings of the parties throughout this case, the Court is able to reliably determine which vague entries mask an inefficient use of counsels' time and which imprecise entries are simply poor recordkeeping.  After careful review, the Court is confident that the vague entries by counsel require only a modest reduction in the hours requested.  Accordingly, the Court will reduce Mr. Ryu's request by 1 hour.

### iii.    Billing for Unnecessary Work

Defendants challenge Plaintiff's counsels' time entries as billing a total of 11 hours for work related to depositions and a trial that never occurred. (Dkt. 18 at 8). Plaintiff's counsel acknowledges that because the case settled, depositions and trial did not occur in this case (Dkt. 16 at 2; 23 at 9) but he insists that this time spent was reasonable because the time was not excessive and he could not "know[] the future."[22] (*Id*. at 9). But the fact that there were no depositions or trial here and that these efforts also had no effect on the settlement is dispositive of

---

[22]    The bulk of these 11 hours stems from 8.9 hours spent on "meeting with client re hours, rates, and recalculations based on defendants' records and deposition prep." (Dkt. 16-1 at PageID# 83). Although the block-billed nature of this description leaves some question of whether all of the 8.9 hours spent here pertain to the deposition or if they served some other purpose, Plaintiff's counsel's briefing confirms that this time was in fact exclusively devoted to depositions. (*See* Dkt. 23 at 5, 9)

the matter, and these 11 hours cannot be included in the reasonable hour figure. *See, e.g.*, *Alexander v. City of Jackson, Miss.*, 2011 WL 1059293, at *10, 15 (S.D. Miss. March 21, 2011) (deducting 131.5 hours from lodestar for work preparing for second trial which did not occur as "duplicative and/or excessive").  The Court further finds that issues related to the taking of depositions and trial preparation in this case overlap substantially with legal work performed in the *Son* case, for which Plaintiff's counsel and his colleagues have already been awarded attorney's fees.  Accordingly, the Court will reduce Mr. Ryu's request by 11 hours.

iv.    Billing for Clerical Work

Defendants assert that Plaintiff inappropriately billed attorney rates for approximately 2 hours of clerical work, citing a few examples of Michael Ryu performing discovery production and scheduling related tasks (Dkt. 18 at 9 (citing Dkt. 16-1 at PageID# 82 (0.5 hours for "document production," 1 hour for "discovery demands out," 0.2 hours for "depo scheduling; litigation strategy," and 0.3 hours for "litigation scheduling")).  "Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as . . .  attorney fees." *McNeil*, 2017 WL 9771834, at *8 (internal quotation marks omitted) (quoting *Abusamhadaneh v. Taylor*, 2013 WL 193778, at *38 (E.D. Va. Jan. 17, 2013).  Plaintiff's counsel asserts that the cited charges are not clerical because they entail necessary attorney review of document production and discovery demands and that legal strategy is involved in the scheduling of deposition and other litigation events. (Dkt. 23 at 10). The Court does not find Plaintiff's counsel's explanation as to scheduling persuasive.  Legal rates may be charged only for legal work, and counsel's argument would transform any perfunctory event into a legal one without practical limit. Accordingly, the Court will reduce Mr. Ryu's request by 0.5 hours attributable to "depo scheduling . . ." and "litigation scheduling."

20

### v.   Billing for Duplicative Work

Defendants attack Plaintiff's submission as excessive because "in a single plaintiff case, Plaintiff includes three entries across three days labeled 'revise complaint,' and five entries totaling seven hours labeled 'wage calculation.'" (Dkt. 18 at 9). In turn, Plaintiff's counsel argues that the 0.1 hours and 0.5 hours, spent by Ms. Kim and Mr. Ryu respectively, revising the complaint is reasonable, especially in light of the new retaliation claim arising out of allegations that Plaintiff was fired for refusing to refund a settlement payment from the U.S. Department of Labor. (Dkt. 23 at 10). Counsel further asserts that the time records show that calculation of wages did not take seven hours, and the wage calculation was complicated by Defendants' incomplete disclosures and the fact that Plaintiff worked as both a personal care aide and English teacher for Defendants, thus having different pay rates and schedules at various times. (*Id.*) The Court agrees with Plaintiff's counsel on both points. On the latter, the time records indicate simply that Cathy Kim spent 5.2 hours performing wage calculations, which is reasonable under the circumstances. Accordingly, the Court will not reduce Plaintiff's request on these grounds.

### vi.   Overbilling for Simple Work

Defendants lastly take issue with the time Plaintiff's counsel spent working on discovery responses, arguing that an experienced FLSA attorney such as Plaintiff's counsel should not have taken 12.6 hours to answer seventeen simple interrogatories and produce seven total documents. (Dkt. 18 at 9). Plaintiff's counsel contends that the actual time charged was only 11 hours and that "it takes a lot of time to even answer one [interrogatory]." (Dkt. 23 at 13). Due to Plaintiff's counsel's repeated use of barebones descriptions, it is unclear which party's accounting is correct, and the Court independently identified in the record a total of 11.6 hours of the time spent on

discovery responses.[23] While Plaintiff's counsel *could* be correct that the interrogatory responses provided (*see* Dkt. 23-2) are the product of a reasonable use of this time, it is impossible for this Court to say, given Plaintiff's sparse time entries, which "fail to identify the nature of the work performed" and do not dispel the possibility of block billing or redundant uses of time. *Crump*, 245 F. Supp. 3d at 709. Indeed, Plaintiff's counsel seems to admit that "all [of the work regarding] discovery responses[,] including production of documents (drafting the responses, reviewing the documents, explaining the discovery demands to the client and guiding the Plaintiff to gather the responsive documents) were rolled into five entries that are all basic variations of "prep response." (*See* Dkt. 16-1 at PageID# 82; Dkt. 23 at 13). Accordingly, the Court, taking care to avoid double-counting with the previously assessed reduction for vague entries, will reduce Mr. Ryu's request by 2 hours.

### d. The Remaining Barber Factors

As discussed below, the *Barber* factors most relevant to this case have already been subsumed into the Court's lodestar analysis, and the remaining *Barber* factors do not warrant additional adjustments.

#### i.   The time and labor expended

This factor was fully considered in the reasonable rate and hour analyses and no further adjustments are warranted on these grounds.

#### ii.   The novelty and difficulty of the questions raised

The questions raised in this case were neither particularly novel nor difficult.  At its core,

---

[23]   The Court's own calculations suggest that Plaintiff's counsel spent 11.6 hours on discovery responses, based on the following: 0.4 hours for "prep response," 3.70 hours for "prep response," 5.10 hours for "prep response to interrogatories," 1.30 hours for "prep response to requests for production of documents," and 0.6 hours for "prep response to interrogatories." (*See* Dkt. 16-1 at PageID# 82).

this case involved a garden-variety FLSA overtime claim.  There was also an FLSA retaliation claim founded upon a seemingly novel factual pattern (Defendants' alleged demand for return of amounts paid to Plaintiff under a settlement with the Department of Labor) (Dkt. 1 at 8–9; Dkt. 16 at 3). But based on this Court's review of the time records, it does not appear that this apparently unusual form of retaliation presented any particular difficulty or required unusual effort from Plaintiff's counsel. Indeed, the only discernable effect appears to be counsel's expenditure of 2.2 hours for "legal research related to retaliation by returning DOL settlement payments" (Dkt. 16-1 at PageID# 81) which is a charge that is uncontested by Defendants and which the Court finds reasonable. No further adjustments are warranted on these grounds.

### iii.    The skill required to properly perform the legal services rendered

Plaintiff's counsel notes that this case required Korean cultural and language competence on the part of Plaintiff's counsel. (Dkt. 16 at 4). These considerations have been accounted for in the reasonable rate and hour analysis. No further adjustments are warranted on this basis.

### iv.    The attorney's opportunity costs in pressing the instant litigation

Plaintiff's counsel argues that the "opportunity cost of litigating this case was high," noting that it was taken on contingency (Dkt. 16 at 4).  But concerns over uncertainty of payment and advancement of costs are "typically encountered in wage and hour claims" and are not so unusual as to justify an increased award.  *Matias Guerra v. Teixeira*, 2019 WL 3927323, at *7 (D. Md. Aug. 20, 2019).  Moreover, as in *Cho*, Plaintiff's counsel does not identify any opportunities lost or cases declined due to his involvement in this lawsuit. *Cho*, 2020 WL 1056294 at *16.  No further adjustments are warranted on these grounds.

### v.    The customary fee for like work

This factor was fully considered in the reasonable rate and hour analyses and no further

adjustments are warranted on these grounds.

### vi. The attorney's expectations at the outset of the litigation

Plaintiff's counsel acknowledges that he took this case on contingency (Dkt. 16 at 4) and was fully aware of the possibility of recovering no compensation for his and his colleagues' work in this matter, as is typical of plaintiff-side wage and hour representation. Moreover, given counsel's experience in this practice area and as he acknowledges, counsel was also fully aware of the likelihood that their compensation could ultimately be decided by a Court applying a reasonableness standard (*Id*.; Dkt. 51 at 1). No further adjustments are warranted on these grounds.

### vii. The time limitations imposed by the client or circumstances

Plaintiff's counsel acknowledges that Plaintiff did not impose any specific time limitations in this matter. No further adjustments are warranted on these grounds.

### viii. The amount in controversy and results obtained

On this point, Plaintiff's counsel submits that the "amount in controversy was substantial, and the result obtained is substantial on its own, as well as compared to the amount in controversy." (Dkt. 16 at 4). As discussed below at step three, the Court agrees.  The Court notes that sometimes concerns arise when the final attorney's fee award exceeds that of the settlement amount itself, but there is no such issue here as the final attorney's fees award of $19,590.60 is significantly less than the amount Plaintiff received under the terms of the settlement.[24] *Cf. Cho*, 2020 WL 1056294 at *17 (citing *Gomez*, 434 F. Supp. 3d at 383, 387); *LaFleur*, 189 F. Supp. 3d at 601 ("fee awards need not be proportionate to the results obtained by a plaintiff").

---

[24]     The Court is required to apply all of the *Barber* factors at step 1 of the fees analysis, but the eighth factor overlaps to a degree with step three of the analysis, at which the Court is required to "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F. 3d at 81, 88. Thus, there is a risk of unwarranted double-adjustments. "With this concern in mind . . . [the Court] will follow the direction of the Fourth Circuit and apply all the [*Barber*] factors when assessing the lodestar amount. However, the ultimate impact of the degree of success in this case will be considered in step three." *Matias Guerra*, 2019 WL 3927323, at *7; *Cho*, 2020 WL 1056294 at *17 n.14.

*ix.    The experience, reputation, and ability of the attorney*

This factor was fully considered in the reasonable rate and hour analyses and no further adjustments are warranted on these grounds.

*x.    The undesirability of the case within the legal community in which the suit arose*

On this point, Plaintiff's counsel states that they are "honored to represent the plaintiffs." (Dkt. 16 at 5). At various times in this and the related *Son* case, Plaintiff's counsel has emphasized the deterrent and incentivization purposes of the FLSA and its fee-shifting provisions. (*See, e.g.*, No. 1:20-cv-1047 Dkt. 253 at 20–21; Dkt. 273 at 9); *see also Fernandez v. Kinray, Inc.*, 2014 U.S. Dist. LEXIS 17954, at *30–31 (E.D.N.Y. Feb. 5, 2014) ("The attorney's fee provision encourages employees to bring claims, and the retaliation provision protects employees once they do. The policy considerations that led Congress to enact the FLSA are implicated when plaintiffs assert claims, not only when plaintiffs are found to have meritorious claims.").  It is also true that "cases with individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action" and that "[c]ases taken on contingency, although a common practice, are even less desirable as there is no guarantee of payment or reimbursement of expenses." *Matias Guerra*, 2019 WL 3927323, at *7.  While these considerations are perhaps not as prominent when a case is settled, they are relevant nonetheless, and the Court has considered them to an appropriate degree in the lodestar analysis.  No further adjustments are warranted on these grounds.

*xi.    The nature and length of the professional relationship between attorney and client*

Plaintiff's counsel states that this case is the "first time [they] have worked for the plaintiff" (Dkt. 16 at 5). No further adjustments are warranted on these grounds.

25

*xii.     Attorneys' fees awards in similar cases*

This factor has been fully considered in the reasonable rate and hour analysis, and no further adjustments are warranted on these grounds.

***e. Lodestar Amount***

Based on the findings above, the Court finds the lodestar amount at step one to be $20,595.72.[25]

**Step 2: Reducing Fees for Hours Spent on
Unsuccessful Claims Unrelated to Successful Ones**

"After determining the lodestar figure, the court should then subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F. 3d at 244 (internal quotation marks omitted). Because there were no "unsuccessful claims" in this case, nor do the parties suggest otherwise, no adjustment at this step is necessary.

**Step 3: Awarding a Percentage Based on the Degree of Success**

The third and final step of the attorney's fees analysis requires the Court to "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F. 3d at 244.  "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F. 3d 492, 506 (4th Cir. 2006). "The degree of success is measured by two reference points, namely the amount sought at the outset of the litigation and the damages and relief awarded." *Matias Guerra*, 2019 WL 3297323, at *9; *Cho*, 2020 WL 1056294 at *20–21; *McNeil*, 2017 WL 9771834, at *11 (quoting *Jackson*,

---

[25]     The lodestar figure was calculated by multiplying Michael Ryu's reasonable hourly rate of $413 by 42.5 hours reasonably expended in litigating this case (57 minus 14.5 hours of adjustments), which equaled $17,552.5.  The Court then multiplied Sara Ryu's hourly rate of $389.40 by 1.1 hours expended, which equaled $428.34.  Next, the Court multiplied Ms. Kim's hourly rate of $94.40 by 27.7 hours expended, which equaled $2,614.88. Adding these figures together totaled $20,595.72. which is the lodestar amount.

391 F. App'x at 244) ("the amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded"). But this does not mean that "fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Matias Guerra*, 2019 WL 3927323, at \*9 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)); *see also Nigh v. Koons Buick Pontiac GMC, Inc*., 478 F.3d 183, 190 (4th Cir. 2007) (holding that courts may not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall"). The amount recovered is "just one of many factors to consider," but courts must give "primary consideration to the amount of damages sought to constrain a court's discretion in setting an award." *Cho*, 2020 WL 1056294 at 21 (internal quotation marks and citations omitted) (quoting *Doe*, 435 F. 3d at 506).

In this case, Plaintiff sought $55,287.00 in damages arising out of his wage claim, as well as punitive damages for retaliation. (Dkt. 1 at 3, 9–10). Under the terms of the settlement, Plaintiff ultimately received $████. While this does not match the full amount desired by Plaintiff, counsel clearly achieved a significant degree of success for his client in this action (moreso than most of the plaintiffs in the *Son* case) and Defendants do not contend that there is a gross disparity between the result obtained and the relief originally sought. The final settlement amount is an important factor, but the Court also considers, among other things, the legal work required to achieve the settlements and the quality and the quantity of Plaintiff's evidence. After careful consideration, the Court finds that an additional reduction of 5% to Plaintiff's counsels' fee award of $20,595.72 (the lodestar amount the Court determined appropriate at the conclusion of step 1) will be assessed to account for the degree of success achieved. This results in a final fee award of $19,565.93. This fee award is substantially less than the settlement amount received by Plaintiff and is a figure that the Court finds reasonable on its face given the nature of the case.

### III.   Costs of Litigation

In addition to awarding attorneys' fees, "district courts have the discretion to determine the costs that will be assessed [] in FLSA cases." *Andrade*, 852 F. Supp. 2d at 644.  The costs that may be charged include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services," including "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Cho*, 2020 WL 1056294 at *22 (internal quotation marks omitted) (quoting *Almendarez v. J.T.T. Enterprises Corp.*, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010)).

Here, Plaintiff requests $584.90 in costs and expenses associated with this litigation. (Dkt. 16 at 6). In support, they provide an itemized list of costs (Dkt. 16-1 at PageID# 85). Defendants do not contest Plaintiff's request for costs and expenses. A review of the record reveals that Plaintiff seeks $8.90 for FedEx shipping of the representation agreement to the client's home, $402 for the case filing fee in this Court, and $174 for the process server to serve the Defendants in this case. (*Id.*). These claimed costs are reasonable and sufficiently detailed. Accordingly, no adjustments are warranted and Plaintiff's counsel is entitled to an award of $584.90 for costs and expenses.

### IV.   Conclusion

For the aforementioned reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Attorney's Fees (Dkt. 16) is **GRANTED-IN-PART**; it is further

**ORDERED** that Plaintiff's counsel will be awarded a total of **$20,150.83**, consisting of **$19,565.93** for attorneys' fees and **$584.90** for costs and expenses; it is further

**ORDERED** that payment shall be made within 60 days of entry of this Order; it is further

**ORDERED** that the Clerk of Court is directed to terminate this civil action.

**ENTERED** this 16th day of December, 2024.


_William E. Fitzpatrick_
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia